## SCHMELTZER, APTAKER & SHEPARD, P.C.

COUNSELORS AT LAW
THE WATERGATE
2600 VIRGINIA AVENUE, NORTHWEST, SUITE 1000
WASHINGTON, D.C. 20037-1922
WEB SITE http://www.saspc.com
E-MAIL sas@saslaw.com
FAX (202) 337-6065
(202) 333-8800

June 20, 2003

The Honorable J. Frederick Motz
United States District Judge
United States District Court
District of Maryland
101 W. Lombard Street
Baltimore, MD 21201

      Re:    *White v. Global Commerce and Information, Inc.*,
                Civil Action No. JFM 03-26 (D. Md.)
                Telephone Conference Date and Time: June 24, 2003 at 4:15 p.m.

Dear Judge Motz:

      We write to provide you with plaintiff's position with respect to certain deficiencies in defendant's responses to plaintiff's discovery requests in the above-referenced action in preparation for the telephone conference scheduled for June 24, 2003 at 4:15 p.m.

      **Interrogatory Number 11 and Request for Production Number 22**.[1] Interrogatory number 11 sought specific information for individuals who ceased to be employed by Global Commerce and Information, Inc. ("Global" or "the Company") since January 1, 1996. Request number 22 sought documents pertaining to this same information. The Company asserted objections and refused to respond at all to the interrogatory or request for documents.

      In an attempt to resolve this dispute, plaintiff was willing to limit the request to (1) all individuals who ceased to be employed by Global since January 1, 2001 and (2) all individuals who ceased to be employed by Global since January 1, 1996 due to performance-related issues.

---

[1]    Rather than produce verbatim the plaintiff's discovery requests, the Company's response and any supplemental interrogatory response of the Company, plaintiff has attached hereto the relevant pages from the Company's supplemental interrogatory responses and the Company's responses to the request for documents, which sets forth both the requests and the responses.

The Honorable J. Frederick Motz
June 20, 2003
Page 2

Plaintiff indicated that with respect to any responsive individual, plaintiff sought such individual's personnel file, documents that concern the individual's cessation of employment (including documents that support or indicate the basis for cessation of employment) and documents relating to any discipline, warnings, counseling or documents which put the person on notice of any alleged deficiency which preceded the cessation of employment. Defendant still refused to respond to the discovery requests.

In another attempt to resolve the matter, plaintiff stated she would limit the discovery requests to (1) all individuals who ceased to be employed since January 1, 2001 and (2) all individuals who ceased to be employed since January 1, 1998 due to performance-related issues. Defendant never responded to this proposal, and has failed to provide any responsive information.

The information sought by plaintiff is relevant to this action. Plaintiff has brought claims alleging, among other things, that her termination constitutes pregnancy discrimination and that Global breached its contract with plaintiff when it terminated her without following its progressive discipline policy. Plaintiff alleges that she was told by the President of the Company that she was being terminated due to a restructuring, and plaintiff alleges that she was the only person let go during this alleged "restructuring." Thus, the changes in the composition of Global's work force are relevant to this action, and plaintiff should be entitled to discovery regarding individuals who ceased to be employed by the Company so as to address the legitimacy of the reason given to plaintiff for her termination.

Some time after plaintiff was terminated by the Company, the Company publicly took the position that Ms. White was terminated for performance reasons. This had never been told to Ms. White at the time she was terminated. In fact, Ms. White had never been disciplined for poor performance while she was employed by the Company. While Global has a progressive discipline policy, Global did not follow that policy with respect to Ms. White. Rather, Global terminated Ms. White without notifying her of any alleged deficiencies in her performance or giving her an opportunity to correct such alleged deficiencies. Global has, however, followed its progressive discipline policy for other employees with performance-related issues and documents may exist demonstrating that other employees were given warnings prior to termination. Accordingly, the information sought by plaintiff regarding other employees terminated for performance reasons is not only relevant to plaintiff's breach of contract claim, but would be relevant to demonstrating that the Company's now-asserted reason for Ms. White's termination – poor performance – is pretextual. Global is a small employer. It is counsel's good faith belief that Global employs no more than 50 employees. Thus, it should not be unduly difficult to respond to these requests.

**Interrogatory Number 13 and Request for Production Number 24.** In interrogatory 13, plaintiff sought, among other things, a description of any statements or communications made by Global regarding individuals' pregnancy, use of leave or reinstatement at the conclusion

The Honorable J. Frederick Motz
June 20, 2003
Page 3

of leave, and the identification of all documents. Request for Production number 24 is the corresponding request for documents. Global did not provide this information.

     Plaintiff sought to clarify this interrogatory by explaining that she was seeking statements or communications regarding such individual's pregnancy, effect of pregnancy or use of leave upon that individual's employment with the Company, and statements or communications regarding such individual's reinstatement and the position, motivation or thinking with respect to the reinstatement of such individual. Global continued to refuse to respond to this request, but stated that it may be willing to investigate any statements made by only two Company officials (Mike Ziman and Stanley Soldz) regarding the effect of pregnancy or use of leave upon an individual's employment and regarding her reinstatement. Plaintiff was willing to agree to statements concerning these matters, but informed Global that the investigation needed to be conducted as to all management employees of the Company and not merely the two individuals whom Global suggested. In response to this proposal, Global sought an explanation from plaintiff as to who is considered a "management employee." Despite the absurdity of this request, plaintiff explained that she was looking for statements or communications by all persons with supervisory or managerial authority or responsibilities, all persons with the title of supervisor, manager, account manager, director, vice president, or any other owner or officer of Global. Global has still completely refused to respond to this request, and has not even responded with respect to the two individuals for whom it was originally willing to provide the information.

     Plaintiff has alleged in her complaint that the President of the Company told plaintiff, while another employee was on maternity leave, that if such employee attempted to return to work at the conclusion of her leave, he would make the employee's life miserable so that she would quit her job with the Company. In addition, in her interrogatory responses, plaintiff explained that the President of the Company did not intend to return this employee's accounts to her when she returned from maternity leave and, in fact, told the plaintiff that the employee would have to find all new accounts and start over. In addition, plaintiff set forth in her interrogatory responses that female employees complained to her about comments made to a male officer of the Company that the Company should not hire another woman with children but should hire a man, as a man will not have to leave when the children are sick and a man is more productive than a woman with children. In response, the male officer of the Company commented that the woman the Company was going to hire was "hot" and "did you see those legs." Plaintiff reported this incident to the President of the Company, who took no action. Plaintiff set forth other similar incidents in her interrogatory responses.

     Clearly the information plaintiff seeks is relevant and the Company should be required to respond to the request. In fact, since June 25, 1992, there have only been 4 individuals (including the plaintiff) who worked for Global while pregnant – one of whom was on maternity leave in 2003. Again, as set forth previously, Global is a small employer. Accordingly, it should

The Honorable J. Frederick Motz
June 20, 2003
Page 4

not be difficult for Global to provide the requested information and any corresponding documents.

**Interrogatory Numbers 17-18 and Request for Production Numbers 25-26.** Interrogatory Number 17 sought information regarding all individuals hired by Global from July 2001 to the present. Interrogatory Number 18 sought information regarding all placements made by Global since January 1, 2001. Request numbers 25 and 26 correspond to the information sought in these interrogatories. Global merely objected to these requests and did not provide any responsive information.

As set forth above, at the time of her termination, plaintiff was told that she was being terminated due to a restructuring. Thus, information regarding people hired by the Company shortly before plaintiff's termination and after plaintiff's termination is relevant to assess the legitimacy of any alleged "restructuring." Plaintiff should be entitled to pursue discovery on this theory.

In addition, plaintiff alleges that she was told both before and during her maternity leave that the Company was doing well and had made a number of placements. Shortly thereafter, she was told she was terminated due to a restructuring. Plaintiff should be entitled to ascertain information regarding the Company's business to evaluate any alleged "restructuring." Plaintiff even proposed limiting interrogatory 18 and request for production number 26 regarding placements made by the Company to the time period of January 1, 2001 through the date plaintiff filed her administrative charge. The Company, nevertheless, has still outright refused to respond to these requests.

**Interrogatory Number 20 and Request for Production Number 21.** Interrogatory number 20 sought a description of all complaints made by plaintiff, concerns raised by plaintiff or communications by plaintiff to Global concerning statements made by Global employees regarding the employment of women, pregnant women or women with children. Request number 21 sought documents concerning this information. The Company responded to the interrogatory that plaintiff never communicated to the President of the Company any complaint regarding the employment of women, pregnant women or women with children, and the Company did not produce any documents.

Plaintiff requested that the Company respond to the interrogatory as it pertained to other employees, officers and managers of Global, as the interrogatory was not limited solely to the President of the Company. Plaintiff clarified that she would limit these requests to the Company's main office in Maryland and its office in Fredericksburg, Virginia, and that she was seeking information concerning complaints, concerns or communications regarding the employment of women, women with children, pregnant women or the effect of such pregnancy upon the individual's employment.

The Honorable J. Frederick Motz
June 20, 2003
Page 5

As set forth above, plaintiff has described both in her complaint and in her interrogatory responses situations where employees of Global – including officers of the Company – have made statements regarding women who were pregnant and the reinstatement of such women upon conclusion of maternity leave, that certain of those statements were made by the President of the Company, and that plaintiff reported other statements to the President of the Company.

Thus, the information plaintiff seeks in these discovery requests is clearly relevant to plaintiff's causes of action. In addition, the information tends to demonstrate the Company's motivation and intent with respect to pregnant women.

**Interrogatory Number 21 and Request for Production Number 6.** Interrogatory 21 sought information regarding the corporate structure of Global, and request number 6 sought documents concerning such information. Global objected to these requests and refused to respond. These requests sought basic corporate information and plaintiff is entitled to discover information about the Company she sues. In addition, certain of the information requested may be relevant to the issue of damages or enforcement of any judgment plaintiff may obtain in this action.

**Request for Production Number 20**. Request number 20 sought documents concerning any complaint ever made by plaintiff to any current or former agent or employee of Global, including documents concerning any investigation conducted by Global or any response taken by Global. Global completely failed to respond to this request. In an attempt to limit this request, plaintiff was willing to seek documents for the time period since January 1, 1998. Plaintiff further clarified that she was only seeking documents over which Global had possession, custody or control and that if Global did not have control over documents individuals may possess at home then clearly Global could not produce such documents.

Plaintiff set forth in her interrogatory responses numerous complaints and issues that she brought to the attention of various officers at Global (some of which are explained above). Thus, the request for documents is clearly relevant.

For the most part, Global has made absolutely no attempt to compromise or reach agreement on the discovery requests set forth above, despite efforts by plaintiff to limit certain of the requests. Even if objections are raised, the federal rules require a party to respond to discovery to the extent the requests are not objectionable. Global has failed to do so.

**Defendant's Privilege Log.** In its privilege log, Global stated that "H. Michael Ziman and Stanley Soldz had conversations with counsel relating to the termination of Plaintiff's employment prior to the date that Plaintiff's Charge of Discrimination was filed." Global further stated that "[d]ivulging any additional information regarding these communications would cause disclosure of privileged information." Plaintiff requested that Global provide the date of such communications as part of its privilege log. Global refused.

The Honorable J. Frederick Motz
June 20, 2003
Page 6


The instructions to this Court's standard interrogatories, set forth as an appendix to the local rules, state that for oral communications the date and place of the communication, among other information, should be provided unless divulging the information would cause the disclosure of the allegedly privileged information.  Merely providing the date that such communications took place would not divulge the privileged communication.  Plaintiff is not seeking an explanation of the substance of the communication.  This is really no different than when a party lists a document on a privilege log between counsel and the client, providing the date of the document, or when a person is asked in deposition when he or she met with counsel to prepare for the deposition.  Global should provide the date of the communications to plaintiff.

**Protective Order.**  Finally, plaintiff wishes to bring to the Court's attention an issue concerning the protective order the parties are attempting to negotiate, as Global will not produce any personnel files to plaintiff without the protective order, and the parties seem unable to reach an amicable resolution of one discrete issue.

Global proposed utilizing the protective order set forth in the appendix to the Court's local rules.  Plaintiff wanted to add to the list of persons to whom disclosure was permitted "third parties who have a need to review documents to further the prosecution of the case" and indicated that plaintiff would seek such person's agreement in writing to be bound by the protective order prior to disclosure being made.  Global responded that it would agree that third parties could review their own personnel documents and that documents could be used in deposition, but Global would not agree "that third parties can view the private personnel documents of current or former" employees.

At that point, plaintiff was willing not to add any language to the protective order regarding disclosure to third parties.  Instead, plaintiff wanted language added to the protective order that if plaintiff finds a need to disclose protected material to a third party during the course of this litigation, plaintiff could seek the Company's consent in advance of such disclosure to allow an exception to the protective order permitting the third party to be shown protected material, which consent would not be unreasonably withheld.  Plaintiff further indicated that if the Company refused to consent, there must be language in the protective order which allowed plaintiff to present the issue to the Court seeking permission for the disclosure.

The Company was willing to agree to this proposal, subject to the Court's approval, except for the language that the consent not be unreasonably withheld.  Without a reasonableness standard and an agreement on the Company's part to act reasonably and in good faith in determining whether it will permit disclosure, the proposed language has no meaning and is irrelevant.  There is absolutely nothing unreasonable about the scenario proposed by plaintiff, and defendant should be willing to agree to act in a reasonable manner.  Plaintiff regrets having

The Honorable J. Frederick Motz
June 20, 2003
Page 7

brought this issue to the Court's attention; however, defendant's obstinacy has left plaintiff with no choice.[2]

      Based on the foregoing, plaintiff respectfully requests that the Court Order Global to respond to plaintiff's interrogatories and produce responsive documents, and further requests that the Court award plaintiff her costs and attorneys' fees in attempting to resolve these issues amongst the parties and before the Court.

      Thank you for your assistance to the parties.

      Respectfully submitted,

      SCHMELTZER, APTAKER & SHEPARD, P.C.


      By:    /s/ Anessa Abrams
              Anessa Abrams
              Gary L. Lieber

Enclosures

---

[2] We anticipate that, among other things, defendant's counsel will complain that plaintiff's counsel has been obstinate. We say this because defendant's counsel has accused plaintiff's counsel of generating "the most extensive discovery requests by a plaintiff and the most excessive amount of time in resolving disputes of any employment related case I have been involved with in 14 years of practicing law." Perhaps counsel has not dealt with plaintiffs that vigorously pursue discovery. We suggest, with all due respect, that the cause of this over abundance of correspondence lies at the doorstep of the defendant, which has stonewalled the most basic type of discovery, such as the disparate treatment evidence requested in interrogatory number 11. We note therein that defendant has failed to offer *any* compromise to this most fundamental of requests in a Title VII case.