

Representing Management Exclusively in Workplace Law and Related Litigation

| | | | |
|---|---|---|---|
| Jackson Lewis LLP | ATLANTA, GA | LOS ANGELES, CA | SACRAMENTO, CA |
| 8614 Westwood Center Drive | BOSTON, MA | MIAMI, FL | SAN FRANCISCO, CA |
| Suite 950 | CHICAGO, IL | MINNEAPOLIS, MN | SEATTLE, WA |
| Vienna, VA 22182 | DALLAS, TX | MORRISTOWN, NJ | STAMFORD, CT |
| Tel 703 821-2189 | GREENVILLE, SC | NEW YORK, NY | WASHINGTON, DC REGION |
| Fax 703 821-2267 | HARTFORD, CT | ORLANDO, FL | WHITE PLAINS, NY |
| www.jacksonlewis.com | LONG ISLAND, NY | PITTSBURGH, PA | |

MY DIRECT DIAL IS: (703) 821-4304
MY EMAIL ADDRESS IS: WRIGHTT@JACKSONLEWIS.COM

June 23, 2003

The Honorable J. Frederick Motz
United States District Court
District of Maryland
101 W. Lombard Street
Baltimore, MD 21201

    Re:    White v. Global Commerce and
             Information, Inc.
             OHR Case Number 02-03-021
             <u>EEOC Charge Number: 12E-A2-00021</u>

Dear Judge Motz:

    This letter sets forth the position of Defendant Global Commerce and Information, Inc. ("GCI") regarding the pending discovery disputes between the parties arising from Defendant's responses to Plaintiff's First Set of Interrogatories and Plaintiff's First Request for Production of Documents.

**I.**    <u>**Case Background**</u>

    Global Commerce & Information is an information technology staffing and services company that provides computer analysts and programmers to Fortune 500 companies in the Washington-Baltimore area. During the time period at issue in this case, and at the present time, it has approximately 40 employees. Approximately 8 employees work at its headquarters in Columbia, Maryland. The remaining employees are consultants who work at client locations, such as Northrop-Grumman, Litton and Lockheed Martin. GCI's contracts with its customers vary from 1-2 weeks to several months or years.



The Honorable J. Frederick Motz                                                                June 23, 2003
                                                                                                Page 2

When a contract ends, employment with GCI typically ends for the employees working on that contract. Occasionally, if GCI has another suitable contract position available, it will place an employee whose contract has ended in a new position; however, this is somewhat unusual. As a result, GCI has a high degree of turnover for consultants who work in the field. GCI estimates that most consultants remain with the company for less than six months. More than 200 employees have ceased to be employed by GCI since January 1, 1998. For many of these employees, there is not reliable documentation indicating whether they were discharged, had their contracts terminated by clients or resigned. However, GCI rarely, if ever, discharges a consultant for performance-based reasons, other than in situations where the client itself complains of the individual's performance, requires the removal of the consultant or terminates the contract. GCI hires approximately 2-3 employees per month, and it estimates that it has hired approximately 50 employees since July of 2001.

Plaintiff Michelle White was the Office Administrator, and then the Director of Human Resources, for GCI from September 30, 1996 through November 15, 2001. Plaintiff was discharged from employment by GCI one month after giving birth to her second child. At the time of her termination, Ms. White was a non-pregnant female with two small children. Ms. White was replaced by Bettina Deynes, a non-pregnant female with two small children, including a nine month old infant. Plaintiff claims she was terminated because of her pregnancy, sex and family responsibilities. Plaintiff also alleges a breach of implied contract claim arising out of policies in the company handbook. GCI claims Plaintiff was discharged due to performance problems that were of concern to her supervisors well before she announced her second pregnancy. GCI has already produced extensive documentation and information to Plaintiff regarding these performance deficiencies. *See, e.g.,* Defendant's Response to Plaintiff's Interrogatory No. 8.

II.     **Discovery Disputes**

Plaintiff's Interrogatory No. 11 and Request for Production No. 22: Plaintiff asks GCI to identify every person who ceased to be employed by GCI, for any reason, for the past seven and a half years. In addition, for each such individual, Plaintiff wants:

> the person's name, home and business address, home and business telephone number, job title(s) while employed by Global, dates of employment with Global, the person's sex, the nature and circumstances of the employee's separation from employment, the



The Honorable J. Frederick Motz                                                                                                June 23, 2003
                                                                                                                                                                   Page 3

>        reason for such separation of employment, any discipline or
>        warnings the person received.

Moreover, for each such individual, Plaintiff demands "all documents . . . concerning" such individuals,

>        including but not limited to documents concerning dates of
>        employment, job duties and job title, sex, nature and circumstances
>        of separation of employment, reason for separation of employment,
>        and all documents relating to discipline, including warnings, given
>        to each individual.

Plaintiff offered to "narrow" this interrogatory and request to "all individuals who ceased to be employed by Global since January 1, 2001 and all individuals who ceased to be employed by Global since January 1, 1998 due to performance-related issues."  Even as "narrowed," this interrogatory and request are extraordinarily overbroad, unduly burdensome and well outside the scope of discovery in this case.

        First, as noted in Section I above, less than 1/4 of GCI's employees are office staff like Plaintiff.  More than 3/4 of GCI's employees are consultants working in the field who are not situated similarly to Plaintiff, and whose job duties, performance and reasons for termination have nothing to do with Plaintiff's own responsibilities, deficiencies and reasons for discharge.  Second, GCI rarely, if ever, makes the decision on its own to discharge a consultant for performance-related reasons, or for any reason.  Instead, GCI follows the directions of its customers regarding these issues.  Whether consultants are discharged for performance-related reasons due to complaints from customers has nothing to do with the reasons why Plaintiff was discharged by GCI.

        Third, the fact that others, whether office staff or consultants, may have been discharged for "performance" has no bearing on the type of performance problems for which Plaintiff was terminated.  Performance-related reasons for discharge may include tardiness, negative attitude, poor work habits, lack of attention to detail, poor productivity, insubordination, and a myriad other problems.  The fact that others were discharged for other performance-related reasons has no bearing on the particular performance issues that led to Plaintiff's discharge.

        Fourth, as noted in Section I above, GCI estimates that more than 200 employees have left GCI since January 1, 1998.  These include discharges, resignations, and consultants whose contracts were terminated or expired.  In order to determine which of these persons were



The Honorable J. Frederick Motz  
June 23, 2003  
Page 4

discharged for "performance," someone would have to manually review more than 200 personnel files. In some cases, the reason for termination may not be documented. Given the complete lack of relevance that these individuals would have to the case at hand, it is overreaching for Plaintiff to suggest that GCI should compile and provide this information. It is similarly ludicrous for Plaintiff to seek information dating back to 1998 -- five years ago.

Plaintiff seeks not just a list of these persons, but their addresses, telephone numbers, job titles, dates of employment, sex, the nature and circumstances of the employee's separation from employment, the reason for such separation of employment, and any discipline or warnings the person received. Plaintiff also wants "all documents concerning" these individuals, including, presumably, their entire personnel files and any work product they generated while at GCI. In addition to being a mammoth task for GCI, production of this information implicates the privacy interests of the former GCI employees involved. Such information should not be produced without good reason.

Plaintiff offers two justifications for the extensive information she seeks. Neither is persuasive. First, Plaintiff points to her "breach of contract" claim, alleging that she was entitled to progressive discipline. But GCI's Employee Handbook in effect at the time of Plaintiff's discharge expressly states, "employment is terminable at will, either by me or Global CI. . ." and that "no contract of employment other than 'at will' has been expressed or implied." Global CI Employee Handbook, January 1, 2001, at 4. Global CI's "Disciplinary Actions" policy states, "an employee who does not display satisfactory performance and accomplishment on the job may be dismissed, in certain cases, without resorting to the steps set forth in this policy." Global CI Employee Handbook, January 1, 2001, at 19. A copy of this handbook has already been produced to Plaintiff. Plaintiff's frivolous breach of contract claim cannot be used to justify the costly and intrusive discovery into hundreds of GCI personnel files that she seeks.

Second, Plaintiff claims she was told by GCI's President, Mike Ziman, that her discharge was due to a restructuring. Mr. Ziman denies making this statement. Plaintiff's attempt to take extensive discovery into the "changes in the composition of Global's work force" to prove there was no restructuring is completely illogical. GCI admits there was no restructuring. Plaintiff should not be permitted to engage in extensive and expensive discovery to investigate an issue that the parties do not actually dispute.[1]

---

[1] Plaintiff protests that having found this Interrogatory and Request to be objectionable, GCI must "respond to the interrogatory to the extent it is not objectionable." This is tantamount to asking for every document a person owns, and then, after drawing an objection, insisting that the person must produce such documents as are not objectionable. GCI submits it is Plaintiff's job, not GCI's, to ask appropriately tailored discovery requests. Because



The Honorable J. Frederick Motz                                                                 June 23, 2003
                                                                                                        Page 5


      Plaintiff's Interrogatory No. 13: This Interrogatory sought a list of all individuals who have been pregnant while employed by Global for an eleven-year period, from June 25, 1992 through the date of trial.[2] Plaintiff also asked GCI, for each such individual, to "describe *any* statements or communications *made by Global* regarding such individual's pregnancy, use of leave or reinstatement at the conclusion of leave." (emphasis supplied). In correspondence dated May 19, 2003 and May 21, 2003, Plaintiff revised this request to seek "statements regarding the effect of pregnancy or use of leave upon an individual's employment and regarding such individual's reinstatement" by any "management employees," including "all persons with any supervisory or managerial authority or responsibilities, all persons with a title of supervisor, manager, account manager, director, vice president, and any owner or officer of Global." As revised, this Interrogatory is still overbroad, unduly burdensome and seeks information that is neither admissible nor reasonably calculated to lead to the discovery of admissible evidence.

      GCI has already provided information showing that Mike Ziman alone made the decision to terminate Plaintiff's employment. Statements by non-decisionmakers about the pregnancy leave of other persons have no conceivable bearing on the reasons why Mr. Ziman decided to terminate Plaintiff's employment. In correspondence dated May 15, GCI offered to investigate statements regarding "the effect of pregnancy or use of leave upon an individual's employment and regarding her reinstatement" made by Mr. Ziman or Stanley Soldz, GCI's Chief Financial Officer. Plaintiff rejected this proposal.[3]

      Plaintiff's request would require GCI to interview each individual on its managerial staff and prepare a list containing every statement that any person might have made dating back eight years[4] regarding any pregnant employee's pregnancy, use of leave or reinstatement. This would include many entirely innocent statements, such as a remark to the effect that an employee will be absent on leave starting on a particular date, that an employee will be returning on a particular date, or that a department must plan for an employee's absence by ensuring that her responsibilities will be covered during leave. GCI should not be required to investigate and list all such innocuous statements. Because Plaintiff's request includes many innocent and

---

GCI cannot see any relevance between the information sought and Plaintiff's case, it cannot conceive of a narrower version of this Request that would be appropriate.

[2] Plaintiff also sought, for each person, and GCI provided, their job titles, dates of employment, dates of maternity or pregnancy leave, whether the person returned to work at Global and, if the person did not return, the reason(s) why, the date and circumstances of separation of employment with Global (if the person is no longer employed by Global), and the individual(s) who performed the employee's duties while the employee was on leave.

[3] Having rejected GCI's proposed resolution of this issue, Plaintiff complains that GCI should have performed its side of the proposed agreement anyway.

[4] Four individuals, including Plaintiff, have taken a total of five maternity leaves. The first one was in 1997.



The Honorable J. Frederick Motz                                                                                     June 23, 2003
Page 6

innocuous statements, covers a lengthy time period, and requires interviews of numerous managerial employees who are not decisionmakers in this case, it is overbroad and unduly burdensome and seeks material that is neither admissible nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's request should be denied.

<u>Plaintiff's Interrogatory No. 17, Request No. 25:</u>  Plaintiff seeks a list of all individuals hired by Global from July 2001 to the present. Plaintiff also seeks, for each individual,

> such person's name, job title, dates of employment, home and business address, home and business telephone number, job duties, salary or other remuneration, describe the individuals' performance and whether the individual has received any warnings or discipline, and identify all documents which concern or relate to your response.

In Request No. 25, Plaintiff seeks production of "all documents . . . concerning all individuals hired by Global from July 2001 to the present." Presumably, this would include, for each individual, his or her personnel file, work product, and any other document bearing that person's name. Plaintiff's request is extraordinarily overbroad and cannot be allowed.

First, consultants who work in the field represent approximately 3/4 of GCI's workforce. These persons are not similarly situated to Plaintiff, who worked in GCI's office and had very different job responsibilities. In addition, GCI has a fair amount of turnover for its consultants. GCI hires approximately 2-3 employees per month, and it estimates that it has hired approximately 50 employees since July of 2001. It would be unduly burdensome for GCI to compile a list of these individuals, including their addresses, phone number, job duties, salary, and other detailed information, and to provide fifty personnel files.

Second, this information has no bearing whatsoever on Plaintiff's case. At issue is the reasons why GCI terminated Plaintiff's employment. The personnel files of all persons hired by GCI for the last two years have no bearing on this question. Plaintiff again points to the alleged "restructuring" as justification for the extensive discovery she seeks. There is no reason to take discovery into a restructuring that no one contends occurred. *See* page 4, *supra*. Plaintiff's request for information relating to the approximately 50 employees hired since July of 2001, and "every document concerning" such individuals, is exceedingly overbroad. Plaintiff's request should be denied.[5]

---

[5]   Plaintiff claims that, faced with a remarkably overbroad request for information that has no possible bearing on this case, GCI should "respond to the interrogatory to the extent it is not objectionable." GCI does not


Attorneys at Law

The Honorable J. Frederick Motz                                         June 23, 2003
                                                                        Page 7

Interrogatory No. 18, Request No. 26: Plaintiff seeks "all placements made by Global since January 1, 2001, including the location of the placement, the date of the placement, the number of individuals placed at the location, the duration of the placement, and the revenue received by Global as a result of the placement." Plaintiff also asks GCI to produce "all documents. . . concerning all placements. . . since January 1, 2001." A "placement" is a contract between GCI and a customer to "place" one or more contractors on site with the customer to perform services. In correspondence dated May 13, 2003, Plaintiff offered to limit this request to the time period from January 1, 2001 through March 22, 2002.

This case involves Plaintiff's discharge: whether it was due to her pregnancy, as she claims, or her performance, as the company asserts. GCI can conceive of no possible relationship between the placements made by GCI from January 2001 through March 2002 and Plaintiff's claims. Plaintiff again makes the argument that this information is relevant to the alleged "restructuring" that no one contends occurred. In addition, she claims that she was told in the Fall of 2001 the "company was doing well and had made a number of placements;" she seeks every document related to every placement that the company made for fourteen months in order to investigate this claim. Plaintiff's assertion is ludicrous. Whether she was told the company was "doing well and had made a number of placements" is only marginally relevant at best to her contention that she was discharged due to pregnancy. Plaintiff's claim that she thought the company was "doing well" does not justify the extensive discovery she seeks. Plaintiff's request for every document related to every placement that the company has made for fourteen months should be denied.

Interrogatory No. 20: Plaintiff asks GCI to "describe all . . . communications by plaintiff to Global concerning statements made by Global employees regarding the employment of women, pregnant women or women with children." Plaintiff also seeks an identification of " all documents which concern or relate to your response." This request would cover *any* statement made by *any* Global employee to plaintiff *concerning the employment of any woman*. In an attempt to narrow this request, GCI stated that Plaintiff never communicated to Mike Ziman any complaint whatsoever regarding the employment of women, pregnant women or women with children. However, this information was insufficient for Plaintiff.

Plaintiff's job involved, on a regular basis, making and receiving communications about GCI's employees, many of whom are women. Invitations to a workplace celebration for a pregnant woman, emails among supervisors discussing someone's return from maternity leave

---

know where to begin. GCI does not believe any information sought by this Interrogatory is discoverable in this case.

**jackson | lewis**
Attorneys at Law

The Honorable J. Frederick Motz	June 23, 2003
	Page 8

for purposes of assigning work, and even any document announcing the arrival of a new female employee would be "communications. . . regarding. . . the employment of women. . . " These few examples illustrate why this request is overbroad. Plaintiff's request would literally encompass any statement made to Plaintiff by anyone regarding any female employee.[6]

Plaintiff's request is objectionable for other reasons. First, Mike Ziman made the decision to discharge Plaintiff. The remarks of all other GCI employees regarding the employment of women have no bearing on this case. Second, what is meant by "statements to Global?" This would imply, at a minimum, statements to person authorized to act on Global's behalf, like managers, but in her May 13 letter Plaintiff asserts that this includes "current or former Global employee[s] in the company's main office in Maryland or its office in Fredericksburg, Virginia." Third, responding to Interrogatory 20 would require GCI to interview every employee in the company's Columbia and Fredericksburg offices to determine whether Plaintiff ever made any communication to them regarding women. Plaintiff's request includes much innocuous information that would require extensive effort to compile. This interrogatory is simply overbroad and Plaintiff's request for this information should be denied.

Interrogatory No. 21: This Interrogatory asks for a "description" of GCI's corporate structure, "including but not limited to" its date of incorporation, state of incorporation, incorporators, jurisdictions in which it is authorized to conduct business, identity of all officers (including title and dates of position), and shareholders (including the percentage of ownership, number of shares held, and date such ownership interest was acquired). The corresponding requests seeks "*all documents*. . . concerning the corporate structure of Global, *including but not limited to* its articles of incorporation, bylaws, lists of officers and/or shareholders, stock books, and organizational charts." Plaintiff seeks this information dating from January 1, 2001 to the present. This information has no bearing whatsoever on the reasons for Plaintiff's termination. Plaintiff contends, ambiguously, that this information "may be relevant to issues relating to damages or enforcement of any judgment. . .." Plaintiff fails to state how this information is relevant to damages or enforcement. Plaintiff has offered no justification for seeking this broad, irrelevant information, and disclosure of this information should not be required.

---

[6] Plaintiff attempted to "clarify" this request in her May 13, 2003 correspondence; but this clarification broadened, rather than narrowed, the request. As originally written, Interrogatory 20 asks for all complaints, concerns or communications by plaintiff regarding "the employment of women, pregnant women or women with children. . ." As revised, Plaintiff asked for all complaints, concerns or communications by plaintiff regarding "the employment of women, women with children, pregnant women *or the effect of such pregnancy upon the individual's employment.*" (emphasis supplied). This adds to, rather than diminishes, the categories of information sought by this request.



The Honorable J. Frederick Motz                                                                June 23, 2003
                                                                                                        Page 9

       Request No. 20: This Request seeks all documents concerning any complaint ever made by plaintiff on any subject to any current or former employee or agent of Global. This Request would include, for example, complaints by Plaintiff concerning whether the office is too warm or too cold, whether she had difficulty finding a parking space, or whether she had to stay late to finish a project. In addition, it is not limited to complaints about Global, but includes any complaint Plaintiff might have about her family, her finances, whether she has a headache or whether her roof leaks. As written, this Request goes well beyond the scope of discovery in this case. The Court should deny Plaintiff's request to compel responsive information regarding this Request.

       Privilege Log and Plaintiff's Interrogatory No. 10: Plaintiff asked GCI to identify all communications or meetings during which the subject of terminating plaintiff's employment was discussed. GCI provided non-privileged information in response to this Request, but also stated that some communications or meetings involved counsel. GCI's privilege log states, "H. Michael Ziman and Stanley Soldz had conversations with counsel relating to the termination of Plaintiff's employment prior to the date that Plaintiff's Charge of Discrimination was filed.[7] Divulging any additional information regarding these communications would cause disclosure of privileged information."

       Plaintiff insists that GCI should be required to disclose the dates of these privileged communications. Plaintiff's only conceivable interest in this information is to learn the specific dates on which GCI consulted with counsel regarding Plaintiff. Such information is privileged, because it would effectively require GCI to disclose the events and incidents that required it to seek counsel's advice. Plaintiff has no legitimate interest in this information and no right to this information. GCI should not be required to disclose the dates upon which its principals sought the advice of attorneys in connection with Ms. White's discharge.

       Protective Order: GCI proposed that the parties use the Court's standard protective order to protect the confidential personnel files of third parties in this case. GCI proposed to redact such information as social security numbers, tax information and other private information from these files, but Plaintiff refused to agree. Accordingly, GCI stated that it will produce the files subject to the Court's protective order.

       Now, Plaintiff wishes to amend the protective order to allow unnamed "third parties" to review the confidential personnel information of others. GCI stated that it was not inclined to

---

[7] The parties have agreed that documents and information withheld from disclosure due to attorney-client privilege and/or work product doctrine that were generated after Plaintiff filed her Charge of Discrimination in this case need not be disclosed in a privilege log.

# jackson | lewis
Attorneys at Law

The Honorable J. Frederick Motz

June 23, 2003
Page 10

agree to this without more information, and asked Plaintiff to outline the circumstances she has in mind in order to evaluate Plaintiff's request. Plaintiff declined to identify any "third party" to whom she felt she would need to disclose the confidential personal information of uninvolved GCI employees. Accordingly, GCI could not agree that its consent to such a disclosure "will not be unreasonably withheld." GCI is trying to protect the confidential information of its current and former employees. Having refused to identify the circumstances under which she seeks to disclose private information to others, Plaintiff should not be heard to complain that GCI did not agree to her proposed revision to the Court's standard order.

Attorney's Fees: GCI's counsel has spent approximately 20 hours reviewing and responding to Plaintiff's seven pieces of correspondence (totaling more than 30 single-spaced pages) regarding discovery issues in this case, engaging in telephone conferences with Plaintiff's counsel in an attempt to resolve these disputes, and preparing today's correspondence. It is truly extraordinary in a case of this type for discovery disputes of this magnitude and number to arise. GCI submits that the information outlined above amply demonstrates Plaintiff's relentless pursuit of such vastly overbroad and irrelevant requests as (1) the personnel files and work product of every employee who has left GCI's employ for two and a half years, (2) every document relating to any contract to place an employee with any customer for a 14-month period, and (3) every complaint Plaintiff ever made to any GCI employee concerning anything. GCI requests an award of its attorneys fees in connection with these disputes.

Very truly yours,

JACKSON LEWIS LLP


/s/ Teresa Burke Wright
Teresa Burke Wright